**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| PHILIP D. PILKENTON, | ) | CASE NO. 12-71870 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| PHILIP D. PILKENTON, | ) | |
| | ) | |
| Movant | ) | |
| | ) | MOTION FOR REDEMPTION |
| v. | ) | OF VEHICLE |
| | ) | |
| SPRINGLEAF FINANCIAL SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Debtor's contested Motion for Redemption of Vehicle with respect to a 2005 year model Toyota Tundra pickup truck ("the Tundra") which he used as collateral to secure a loan provided to him by Springleaf Financial Services ("Springleaf"). An evidentiary hearing was held on February 5, 2013 at which time the Debtor appeared with his counsel, Robert T. Copeland, Esquire, and Springleaf appeared by its counsel, David J. Hutton, Esquire. The precise issue presented is the proper redemption value for the Tundra. At the conclusion of the hearing, the Court took the Motion under advisement.

FINDINGS OF FACT

The Court makes the following findings of fact with respect to the Motion:

1. The Debtor filed his Chapter 7 bankruptcy petition with this Court on October 11, 2012 which included a Statement of Intention pursuant to 11 U.S.C. § 521(a)(2) that advised of

his intent to retain the Tundra and reaffirm the debt it secured owing to Springleaf. At the hearing after the Court questioned the Debtor as to why he had not reaffirmed this obligation as provided in the Statement of Intention, his counsel stated that Mr. Pilkenton had been unable to "negotiate" a satisfactory reaffirmation agreement with the creditor.

2. In both Schedules B and D to the petition the Debtor valued the Tundra at $4,610. In the latter schedule he represented the debt owing to Springleaf (as well as the unsecured portion of the debt) as being $4,995.

3. On January 9, 2013,[1] the Debtor filed the instant Motion asserting that a proper redemption value would be "no greater than $2,000" as the vehicle is in "poor condition." On February 1, 2013, Springleaf filed an objection to the Motion which claimed that the NADA retail value of the Tundra is $6,905 if the vehicle is a two-wheel drive model and $8,625 if it is a four-wheel drive model. Springleaf also alleged that the payoff amount of said loan was $4,872.83 on the date of the bankruptcy filing. It attached to its response two separate NADA valuations having a "print date" of February 1, 2013 and setting forth the elements of the different retail valuations.

4. The day before the hearing, the Debtor filed a series of photographs showing the condition of the vehicle, which were admitted into evidence at the hearing. The Debtor testified at the hearing that in his opinion the vehicle had a retail value of only $2,000 due mainly to its mileage of approximately 255,000 miles, plus its condition and various repairs which he indicated it needed.

5. Mr. Pilkenton testified that he has used the truck in his construction work for the last

---

[1] This was the very next day after the last date for the filing in this case of an objection to discharge or a complaint for the determination of the dischargeability of certain types of debts.

seven years, that the truck hit the guard rail and sustained some damage in 2009, that the paint is bad and some of the rails and springs are broken, but he does not have the money to repair the vehicle. He did not offer any testimony or other evidence, however, establishing the cost of making those repairs necessary to put the vehicle in good condition. Neither did he suggest that the Tundra is inoperable or that its condition is such as to preclude its passing Virginia vehicle inspection requirements. In response to questions raised by Springleaf's counsel, he testified that the vehicle is basically in the same condition as it was on the date of filing and that the loan was taken out in August of 2012, just two months prior to filing of the petition. He further testified that the vehicle is four-wheel drive, has air conditioning, has automatic transmission and power windows, but no power seats, power doors or a sunroof.

6. In response to questions raised by the Court, the Debtor testified that when he signed his schedules and valued the vehicle at $4,600, he did not believe that to be the actual value of the vehicle. He did not claim, however, that the use of that figure was the result of a clerical or similar inadvertent error or that he did not intentionally include that amount in his schedules. When asked what he did with the proceeds of the loan, he indicated that he used them to pay some debts but had not disclosed that information in his Statement of Financial Affairs because he did not know that he was required to do so.[2] Springleaf attached a copy of its loan contract with the Debtor as Exhibit A to its Response to the Motion for Redemption and this document was admitted into evidence at the hearing. That document reflects a transaction date of August 24, 2012 and that $3,080.03 of the total loan proceeds of $4,995.99 was paid to Springleaf to

---

[2] The Statement of Financial Affairs does represent in the response to question # 3(a) seeking information about payments to creditors within 90 days preceding bankruptcy that he had paid Springleaf the sum of $190.00 on August 25, 2012.

satisfy an existing debt owed to it by the Debtor, $10.00 was paid by Springleaf for the certificate of title, and the balance of $1,905.96 was disbursed to the borrower.

   7.  Ms. Renee Lovell, a customer account administrator, testified at the hearing on behalf of Springleaf.  Ms. Lovell testified that the amount of the loan provided to the Debtor was based on the NADA value of the vehicle and that the amount financed ($4,995.99) was the same as the value of the vehicle.  Ms. Lovell also testified that Springleaf did inspect the vehicle prior to making the loan and indicated that the report did include comments regarding dents in the vehicle.

   8.  The Court's finding of fact as to the Tundra's redemption value is set forth in the Decision portion of this opinion.

CONCLUSIONS OF LAW

   This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  The Court further concludes that the determination of the value of a secured claim upon property of the bankruptcy estate for the purpose of determining a redemption motion pursuant to 11 U.S.C. § 722 is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(O) as a proceeding "affecting . . . the adjustment of the debtor-creditor . . . relationship[.]"

   The Bankruptcy Code provides in § 722 a right to individual debtors to redeem tangible personal property "intended primarily for personal, family, or household purposes" from

a lien secured by such property.[3]  The language of the statute reads as follows:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption.

This Court in the cases of *In re Kell*, No. 11-71388 (Bankr. W.D. Va. Nov. 17, 2011), and *In re Bullock*, No. 12-70633 (Bankr. W.D. Va. Nov. 15, 2012),[4] dealt with contested redemption motions for a motor vehicle and reviewed the applicable principles which govern the determination of the present dispute.  From those decisions the following conclusions of law are pertinent to the decision of this case:

    1.  The correct standard is now "replacement" rather than "liquidation" value.  11 U.S.C. § 506(a)(2); *Kell*, slip op. at 6-7, citing authorities.

    2.  "With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."  § 506(a)(2).

    3.  The debtor bears the burden of proving that the property is worth less than the amount owing to the creditor which is secured by a lien upon such property.  *See Kell*, slip op. at

---

[3] Springleaf has opposed the Motion purely on valuation grounds and has not challenged it on the basis of any assertion that the Tundra was acquired primarily for work purposes rather than "personal, family or household purposes."

[4] The Court's Memorandum Decisions in these cases can be found on the Court's website (www.vawb.uscourts.gov/Judges/Opinions).

6; *In re Brown*, 244 B.R. 603, 610-11 (Bankr. W.D. Va. 2000).

      4. The proper valuation date is the petition filing date rather than the hearing date upon a redemption motion. *Kell*, slip op. at 7. *See also In re Allen*, 240 B.R. 231, 236-37 (Bankr. W.D. Va. 1999).

      5. "Statements contained in the schedules of a bankruptcy debtor can constitute binding admissions of the factual matters set forth in such schedules." *Kell*, slip op. at 7, citing authorities.

## DECISION

      Unfortunately the evidence produced by the parties leaves much to be desired with regard to providing confidence as to the dealer retail value of the Tundra as of October 11, 2012, the date the petition was filed. The Court is not willing to accept the Debtor's testimony that the value of this vehicle for the purpose of the Redemption Motion should be $2,000 when the schedules he filed under penalty of perjury in this case asserted that the value of such vehicle was $4,600 as of the petition date. Even if he had valued the Tundra in his schedules at the same amount as he later asserted in such Motion that it was worth, however, the Court would still reject his effort to acquire such vehicle for $2,000 because the Debtor has failed to carry his burden of proof on this issue. Although he testified concerning the condition of the vehicle and the repairs it needed, he offered no evidence as to what the cost of those repairs might be other than that he could not afford it. The Court simply has no basis either in the evidence or its own experience to make any finding as to even the approximate magnitude of the reasonable cost of the needed repairs. Neither did the Debtor offer any other basis from which the Court could give credence that his owner's opinion of the Tundra's value is anchored in any informed judgment as

to its actual value in the market place. Indeed his response to a question from the Court indicated that his valuation was based on what he thought he might be able to get for the truck if he tried to sell it, rather than the replacement cost were he to attempt to buy a similar vehicle. Giving consideration to the Debtor's burden to prove that the Tundra's value is less than what is owed upon it, the Court determines, after viewing the photographs of the Tundra offered in evidence by the Debtor, that it is not persuaded that the vehicles's dealer retail value as of October 11, 2012 was less than the $4,872.83 loan payoff as of the petition date claimed in Springleaf's Response to the Motion for Redemption. Accordingly, it will determine the proper redemption value to be $4,872.83. An order granting the Motion in such amount, provided that the Debtor pays such amount in full to Springleaf within fourteen days of the date of this Decision, will be entered contemporaneously herewith.

DECIDED this 12th day of February, 2013.

*William F. Stone, Jr.*
UNITED STATES BANKRUPTCY JUDGE